**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

---

**UNITED STATES OF AMERICA**
        **Plaintiff,**

    **v.**                                      **Case No. 12-CR-4**

**ANDRE H. GOODMAN**
        **Defendant.**

---

## DECISION AND ORDER

The government charged defendant Andre H. Goodman with possessing a firearm as a felon. Defendant moved to suppress evidence obtained pursuant to a search warrant, arguing that the police officer who applied for the warrant falsely asserted that defendant had a specified felony conviction which actually pertained to a different "Andre H. Goodman." The magistrate judge handling pre-trial proceedings in this case held a Franks hearing at which the officer-affiant testified, then issued a recommendation that the motion be denied. The magistrate judge agreed that the officer made a mistake in listing this particular conviction but found it an honest one rather than a deliberate or reckless attempt to mislead the warrant-issuing court commissioner. Defendant objects to the recommendation, requiring me to review the matter de novo. Fed. R. Crim. P. 59(b). De novo review need not involve a de novo evidentiary hearing, even when witness credibility is at issue. See United States v. Raddatz, 447 U.S. 667, 673-76 (1980). Neither side requests a de novo hearing in this case, and I find the record made before the magistrate judge sufficient for me to decide the motion.

### I. BACKGROUND

On October 27, 2011, City of Milwaukee Police Officer Matthew Knight applied for a warrant to search defendant's residence for firearms. Knight averred that a reliable informant

told him that he personally observed "Andre H. Goodman, male-black, 08/04/1970 in possession of a handgun while inside that residence within the past 10 days." (Affidavit for Search Warrant [R. 9-2] at 2, ¶ 4.) Knight further averred that he:

> was able to confirm through Milwaukee County Circuit Court records that Andre H. Goodman, male-black, 08/04/1970, has been convicted in case number 2010CF004659 for the offense of Burglary, making Andre H. Goodman, male-black, 08/04/1970, prohibited from possessing a firearm under Wisconsin State Statute 941.29. Furthermore, Wisconsin Circuit Court Access (CCAP) revealed that Andre H. Goodman, male-black, 08/04/1970 currently has open Court Cases in Milwaukee County, #2011CF001760 Possession of THC (2nd+ Offense) and Court Case #2011CF002032 Bail Jumping.

(Id. at 2-3, ¶ 7.) Based on this affidavit, a Milwaukee County Court Commissioner found probable cause and issued a warrant to search defendant's residence for evidence of the crime of felon in possession of a firearm. (Search Warrant [R. 9-1] at 1.)

Unfortunately, the convicted burglar in Case No. 2010-CF-004659 was Andre H. Goodman, Junior, date of birth of 10/28/1990, not defendant. The affidavit contained no further information regarding defendant's felony record.[1]

## II. APPLICABLE LEGAL STANDARDS

Courts generally presume than an affidavit supporting a search warrant is valid, United States v. Walker, 25 F.3d 540, 544 (1994), and decide probable cause challenges based solely on the contents of the warrant application, see United States v. Koerth, 312 F.3d 862, 866 (7th Cir. 2002). However, under Franks v. Delaware, 438 U.S. 154 (1978), a defendant may obtain an evidentiary hearing on a search warrant challenge if he makes a "substantial preliminary showing" that the affiant intentionally or recklessly included a false statement in the affidavit,

---

[1] It appears that the other cases Knight listed did pertain to this defendant, but they were pending at the time he applied for the warrant and thus did not support an allegation of felon in possession.

2

and that the false statement was material, i.e., necessary to find probable cause. United States v. Schultz, 586 F.3d 526, 531 (7th Cir. 2009). If the defendant makes this preliminary showing, he must at the Franks hearing demonstrate by a preponderance of the evidence that the warrant affidavit contained perjury or a reckless disregard for the truth. If the defendant meets this burden, the court will set aside the false material contained in the warrant affidavit and, if probable cause cannot be established from the remaining (truthful) portion, suppress the evidence obtained through the search. See United States v. McAllister, 18 F.3d 1412, 1416 (7th Cir. 1994).

In the present case, the parties agree that Knight's statement that defendant was convicted of felony burglary in Case No. 2010-CF-004659 was incorrect. They also agree that evidence of defendant's felony status was material. The issue is therefore whether Knight knew or should have known that the statement was false. See United States v. Jones, 208 F.3d 603, 607 (7th Cir. 2000). The parties explored this issue at the evidentiary hearing, at which Officer Knight was the only witness.

### III. **FRANKS** HEARING TESTIMONY

Knight testified that he had been a police officer for nearly twenty years. (Evid. Hr'g Tr. [R. 28] at 5.) In October 2011, while assigned to the Neighborhood Task Force, Knight obtained information that a person named Andre Goodman possessed a firearm unlawfully. Knight testified that based on this information he prepared a search warrant application on a computer. (Id. at 5-6.) An assistant district attorney reviewed the application but contributed no content. (Id. at 7.)

In the affidavit, Knight specified numerous times that the target of his investigation was a black male named Andre H. Goodman with a date of birth of 8/4/1970. (Id.) Knight testified

3

that the purpose of including these features was to identify the individual he was obtaining the search warrant for so that he did not make a mistake, i.e., to differentiate this person from every other person in the world. (Id. at 8.)

Prior to applying for the warrant, Knight obtained information from a confidential informant, summarized in ¶¶ 4-6 of the affidavit. (Id.) He further explained in ¶ 8 why he believed the informant reliable. (Id. at 8-9.) Knight also viewed the house listed in the warrant and checked city tax records, as indicated in ¶ 10. (Id. at 9.) Finally, Knight conducted the record check indicated in ¶ 7 of the affidavit, quoted above.[2] (Id.) In obtaining this information, Knight testified that he initially conducted a CCAP[3] search on his cell phone, then returned to police headquarters where he conducted a second CCAP search on his desktop computer. (Id. at 10-11.) He printed out the results of his CCAP search at headquarters. (Id. at 11.)

Knight indicated that he conducted a simple case search through CCAP using defendant's name. (Id. at 11-12.) Knight confirmed that such a search could be narrowed by including the subject's birth date, but he did not do that on this occasion.[4] (Id. at 12.) Knight further testified that while several cases appeared pursuant to his CCAP search, he printed out the 2010 burglary case, which pertained to Andre Howard Goodman, Junior. (Id. at 12-13; see also Def.'s Hr'g Ex. 3.) Knight admitted that he did not at the time know whether the person he was interested in was a "junior." (Tr. at 13-14.) Further, a print-out pertaining to the 2010

---

[2]The search warrant and affidavit were admitted at the hearing as defendant's exhibit 2.

[3]The acronym "CCAP" refers to the Wisconsin Court System's Circuit Court Access program – "Consolidated Court Automation Programs." http://wcca.wicourts.gov/index.xs.

[4]Defendant's hearing exhibit 1 depicts the CCAP search page.

case introduced as an exhibit at the hearing listed the defendant's date of birth as 10/28/1990, not the date of birth of the subject identified in Knight's warrant affidavit. (Id. at 14; Ex. 3 at 1.) Knight testified that if he had noticed that the date of birth for this defendant did not match the date of birth of his target subject he would not have used this case. (Tr. at 14.) Knight further admitted that the address listed on CCAP for the defendant in the 2010 burglary case did not match the address for his target subject. (Id. at 14-15; Ex. 3 at 1.) However, Knight testified that this did not, at the time he prepared the affidavit, prompt any concern. (Tr. at 15.)

The second page of the CCAP print-out indicated that the defendant in the 2010 case was sentenced to probation on July 5, 2011, less than four months before the search. (Id.) Knight testified that this did not prompt him to investigate this person's custodial or supervisory status; he stated that he typically just looked for the fact of a felony conviction, for which he did not need to venture past the first page. (Id. at 15-16) Therefore, he also overlooked the additional information on the print-out (in the "court record events" section) indicating that the defendant in the 2010 burglary case was revoked on September 20, 2011 and thus likely in custody at the time Knight applied for the warrant. (Id. at 16-17; Ex. 3 at 6.) Instead, he only looked at the first page (and testified that he generally printed out only that page). (Id. at 17.) In this instance, he looked only at the name, the severity of the charge, and the guilty disposition. (Id.) Since he did not notice that the disposition involved probation, he made no attempt to contact the probation officer for the defendant in the 2010 case. (Id. at 18)

On examination by the government, Knight elaborated on the record search he conducted in this case. He testified that immediately after he finished with the confidential informant, he performed an initial CCAP search on his smart phone. (Id.) He recalled that his search pulled up two pending felony cases; he then scrolled down the results, finding Case No.

2010-CF-004659, for Andre Howard Goodman, Junior, which at the time he believed referred to his target subject. He testified that he scrolled down further and saw a 2000 or 2001 possession with intent to deliver cocaine conviction, as well as a felony battery to law enforcement officer conviction. (Id. at 19.) Back at the station, he performed a second CCAP search on his desktop computer in order to confirm defendant's status as a felon; based on the information he had, such status was necessary in order to establish probable cause of a crime. (Id. at 20.) Knight testified that he believed defendant had three prior felony convictions, and he simply selected the most recent for inclusion in the warrant affidavit. (Id.) He testified that he believed the 2010 burglary case pertained to his target, born in 1970. (Id. at 21.) He explained that he made a simple mistake; he did not intentionally pick the wrong conviction. (Id.)

The government introduced CCAP print-outs pertaining to defendant's (actual) prior felonies – possession with intent to deliver cocaine, Case No. 2000-CF-00383, and battery to a law enforcement officer, Case No. 2000-CF-004990 – both of which listed defendant's correct birth date in 1970. (Id. at 22-23; Ex. A & B.) Knight testified that these were the earlier convictions he saw on his smart phone, but that when he went into the office to perform a CCAP search he printed out the most recent conviction he believed to also be associated with the same individual. (Id. at 23.)

On re-examination by defense counsel, Knight testified that the initial CCAP search he performed on his phone employed only defendant's name, which produced a list of all Wisconsin cases in which this name was listed as a party. (Id. at 24.) He further testified that such a search produces several columns: the first column lists case numbers, the second names, and the third dates of birth (sometimes included, sometimes blank). (Id. at 25.) Knight

6

admitted that more than one Andre Goodman popped up pursuant to this search. (Id.) He erroneously picked the 2010 case without confirming that it pertained to a different Andre Goodman. (Id.) He repeated the error in printing off that case back at his office. (Id. at 26.)

## IV.  ANALYSIS

Nobody suggests that Knight purposefully lied or intentionally tried to mislead the court commissioner; it is undisputed that he could have used defendant's prior battery and drug trafficking convictions in order to establish the predicate for a felon in possession allegation. The issue is whether his listing of the 2010 burglary case for Andre Goodman, Jr., can be deemed "reckless."[5]

The Franks decision did not define the phrase "reckless disregard for the truth," other than to suggest that the standard required more than "mere negligence" on the part of the affiant. United States v. Whitley, 249 F.3d 614, 621 (7th Cir. 2001) (citing Franks, 438 U.S. at 171). The Seventh Circuit has stated that the defendant may meet his burden by proving that the affiant in fact entertained serious doubts as to the truth of his allegations or had obvious reasons to doubt the veracity of the allegations. Id.; Jones, 208 F.3d at 607; see also United States v. A Residence Located at 218 Third Street, New Larus, Wisconsin, 805 F.2d 256, 258 (7th Cir. 1986) (likening the standard to that used in First Amendment cases involving libel).

Although I am not untroubled by Knight's sloppiness, under the particular circumstances of this case, I agree with the magistrate judge that his actions amounted to negligence rather than recklessness. First, I agree with the magistrate judge's assessment of Knight's credibility.

---

[5]The government argues that the good faith exception of United States v. Leon, 468 U.S. 897 (1984) applies. However, a "warrant that rests on perjury, or false assertions made with reckless disregard of the truth, is not covered by the Leon principle." United States v. Billian, 600 F.3d 791, 793 (7th Cir. 2010).

7

He testified forthrightly and openly admitted his mistake. Defendant provides no reason to disbelieve Knight's testimony that he saw defendant's other (valid) felonies on CCAP and made an honest mistake in picking the wrong case from the list (choosing it simply because it was the most recent).

Second, the record demonstrates that Knight had no incentive to lie or play fast and loose with the facts. See United States v. Lowe, 516 F.3d 580, 585 (7th Cir. 2008) ("[W]ith respect to incentives, we are unable to see what the government had to gain by creating these inaccuracies, since a correctly drafted affidavit . . . would have been perfectly acceptable – perhaps even more so than the affidavit at issue here."). This is not a case where Knight harbored doubts (say, about the informant's reliability) yet consciously ignored them for fear of what he would find. He knew that defendant had prior felony convictions; he just picked the wrong one for inclusion in the affidavit. As he testified at the hearing, had he listed one or both of the other two, there would be no issue here. (Tr. at 21.) I find that, under the circumstances, Knight acted negligently in picking the wrong felony from the CCAP list.

Defendant argues that Knight had "obvious reasons" to doubt that the 2010 case applied to the target subject. Knight's search turned up more than one Andre Goodman; the first page of the CCAP print out pertaining to the 2010 case listed an address and date of birth that did not match Knight's target; it also indicated the defendant was a "junior." Defendant also criticizes Knight for not looking further into the case, which would have revealed more red flags, including that Andre Goodman, Jr., born in 1990, was probably in jail at the time Knight applied for the warrant. I agree that Knight should have been more careful in reading the CCAP information pertaining to this case. However, the issue before me is whether it was reckless, as opposed to merely negligent, for Knight to pick the 2010 case (for no reason other than it

was the most recent) when he knew that defendant had two other valid felonies. I find that it was negligent.

Finally, I find that the purposes of the exclusionary rule would not be served by granting defendant's motion. See Lowe, 516 F.3d at 584 (evaluating, independent of the merits of the Franks issue, whether the purposes of the exclusionary rule were implicated in the case). As the Supreme Court recently explained:

> To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.

Herring v. United States, 555 U.S. 135, 144 (2009). The Court stressed that the "deterrent effect of suppression must be substantial and outweigh any harm to the justice system," id. at 147; errors resulting from negligence "rather than systemic error or reckless disregard of constitutional requirements" ordinarily will not trigger the exclusionary rule. Id.

Suppression of evidence in cases like this one may lead the police to be more careful in checking records, but the Court has "never suggested that the exclusionary rule must apply in every circumstance in which it might provide marginal deterrence." Id. at 141. Instead, the Court has stated that an "error that arises from nonrecurring and attenuated negligence is . . . far removed from the core concerns that led us to adopt the rule in the first place." Id. at 144. That seems an apt description of what occurred here. There is no evidence that record-checking errors of this sort are common, and given the particular facts of this case – where Knight knew defendant was a felon but mistakenly listed the wrong case – the core purpose of the rule of deterring flagrant, abusive, or patently unconstitutional tactics is not served. See id. at 144-45.

9

Defendant notes that in Lowe the district attorney's office, rather than the officer-affiant, carelessly drafted the affidavit, 516 F.3d at 584-85; in the present case, while an assistant district attorney reviewed the affidavit, Knight prepared and must be held responsible for its contents. It is also true that this is not a case where the officer-affiant relied on records someone else inaccurately maintained, see United States v. Kattaria, 553 F.3d 1171, 1177 (8th Cir. 2009) (finding no Franks violation where the officer-affiant relied on an NCIC report which inaccurately stated that the defendant had a prior conviction); see also Arizona v. Evans, 514 U.S. 1 (1995) (holding that the exclusionary rule did not apply where the police relied on erroneous information resulting from clerical errors by court employees); the CCAP records at issue in this case were correct, Knight just failed to read them carefully enough. However, in Herring the Court expanded the Evans rule to negligent errors by the police; it is not limited to errors by others. See 555 U.S. at 146.

I stress that the holding in this case is based on its particular facts. I do not suggest that the police can mismatch records with impunity. An officer seeking a warrant for John Smith cannot simply type that name into CCAP and list whatever he finds with no further particularization. The name at issue in this case – Andre H. Goodman – is not an exceedingly common one and, as discussed, Officer Knight confirmed before applying for the warrant that defendant had two valid felony convictions. This is not a case where the target subject had no verifiable felony record, so the officer-affiant recklessly attributed to him the record of another person with the same or similar name in order to obtain a warrant.

## V. CONCLUSION

**THEREFORE, IT IS ORDERED** that the magistrate judge's recommendation (R. 25) is adopted, and defendant's motion to suppress (R. 9) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 29th day of June, 2012.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge